# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

PLACE OF GRACE, INC.,                             )
                                                  )
                              Plaintiff,          )
                                                  )
              v.                                  )    Case No. 1:24-cv-01272-TWP-MKK
                                                  )
STATE OF INDIANA,                                 )
EXECUTIVE DIRECTOR, INDIANA                       )
DEPARTMENT OF HOMELAND SECURITY in                )
his official capacity,                            )
INDIANA DEPARTMENT OF HOMELAND                    )
SECURITY,                                         )
THE MEMBERS OF THE FIRE PREVENTION                )
AND BUILDING SAFETY COMMISSION,                   )
                                                  )
                              Defendants.         )

## <u>ORDER ON IDHS DEFENDANTS' PARTIAL MOTION TO DISMISS</u>

This matter is before the Court on a Partial Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by Defendants the Indiana Department of Homeland Security ("IDHS") and its Executive Director (Filing No. 47). Plaintiff Place of Grace, Inc. ("Place of Grace"), operates therapeutic group housing for people recovering from substance abuse and addiction. Place of Grace alleges that IDHS's classification of its recovery homes as Class 1 commercial structures and IDHS's failure to provide a reasonable accommodation excusing certain building requirements violate the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), the Fair Housing Amendments Act, 42 U.S.C. § 3604(f) ("FHAA"), and the Rehabilitation Act, 29 U.S.C. § 794. IDHS and its Executive Director move to dismiss Place of Grace's claims for injunctive relief for lack of subject-matter jurisdiction and failure to state a claim. For the following reasons, the Partial Motion to Dismiss is **granted in part** and **denied in part**.

# I.    BACKGROUND

The following facts are not necessarily objectively true, but, as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all inferences in favor of Place of Grace as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

## A.    Place of Grace's Group Recovery Homes

Place of Grace is a non-profit organization whose purpose is to provide faith-based residential recovery services in Huntington, Indiana, for persons suffering from substance-abuse disorders (Filing No. 38 ¶¶ 9, 37). To that end, Place of Grace operates four group homes in Huntington, Indiana, where residents receive faith and recovery-based treatment, including residential services. *Id.* ¶ 39. Three of the homes (the "Homes") are at issue here: a single-family structure on Guilford Street (the "Guilford Street Home"), which Place of Grace began operating in 2017; and two neighboring homes on Superior Street (the "Superior Street Homes"), which were built in 2024. *Id.* ¶¶ 39–42, 71. The fourth home, located on College Avenue, is not at issue in this litigation. The Homes' residents are all persons seeking recovery from substance abuse disorders and have impairments that substantially limit one or more major life activity. *Id.* ¶ 43. These people cannot live on their own without relapsing and are unable to care for themselves. *Id.* ¶ 39.

### 1.    The Guilford Street Home

The Guilford Street Home is designed as a single-family residence and is physically indistinguishable from the single-family residences surrounding it. *Id.* ¶ 52. It currently houses ten women among four bedrooms. These women live as a family, sharing meals, responsibility, and life. *Id.* ¶¶ 44, 47. The Guilford Street Home also has an attic and small office, which are used by employees who provide services to the residents of the Guilford Street Home and other homes. *Id.* ¶ 45. Residents of the Guilford Street Home receive programming in the living area in addition to

mental health services, as needed, outside the Home. *Id.* ¶ 46. Residents of the Guilford Street Home live there for the six to eight months it takes to complete Place of Grace's treatment program, or longer if they are still unable to live on their own without relapsing. *Id.* ¶¶ 49–51.

The Guilford Street Home has a live-in-manager who assists in the management and supervision of the Home and the support of residents, but the residents are responsible for the day-to-day operation of the Home. *Id.* ¶ 48. It is important to Place of Grace's programming that the residents receive the therapeutic support of living in a family setting. *Id.* ¶ 50.

The Guilford Street Home satisfies all local zoning standards imposed on nearby residences. *Id.* ¶ 56. The Guilford Street Home was licensed by the Division of Mental Health and Addiction as a level 3 recovery home and, in 2018, was inspected by the Indiana Alliance of Recovery Residences. *Id.* ¶¶ 54–55. Through those processes, the Guilford Street Home was found to be compliant with standards utilized by the National Alliance for Recovery Residences, which requires fire extinguishers, smoke detectors, evacuation maps, and fire escape ladders. Emergency lighting has also been installed in the Guilford Street Home. *Id.* ¶ 55.

In January 2022, after five years of uneventful operation, Place of Grace was informed for the first time that IDHS deemed the Guilford Street Home to be a Class 1 structure, and Place of Grace would need to install a sprinkler system or request a variance from the sprinkler requirement. *Id.* ¶ 58. Place of Grace applied for a variance from IDHS. In its application, Place of Grace explained that as a non-profit organization, it could not afford to install a sprinkler system. *Id.* ¶ 61. Place of Grace had successfully applied for a variance from the sprinkler requirement for its College Avenue home several years earlier. *Id.* ¶ 70.

IDHS referred the variance application to the Fire Prevention and Building Safety Commission (the "Commission") for its June 7, 2022 meeting. *Id.* ¶ 59. The Executive Director of

Place of Grace, Brittany Renkenberger ("Renkenberger") attended the meeting, but a decision on the variance was not made. Instead, the Commission told Renkenberger to obtain an updated estimate for the sprinkler system. *Id.* ¶ 63. Place of Grace later received an estimate of $32,000.00. *Id.* ¶ 64. Renkenberger filed a supplemental statement with the Commission indicating that Place of Grace could not afford to install the system and that requiring a sprinkler system would violate the ADA and FHAA, since the Guilford Street Home should be deemed a Class 2 residential structure. *Id.* ¶ 65. Renkenberger attended the Commission's July 6, 2022 meeting and presented the updated estimate. *Id.* ¶ 66. The minutes for this meeting state that the Fire Marshal (a IDHS employee) "felt that [Place of Grace] should be in compliance with the commercial code, which requires a sprinkler system." *Id.* (Filing No. 38-5). The Commission ultimately granted the variance, but only until December 31, 2024 (Filing No. 38 ¶ 68; Filing No. 38-6). The Commission has since stayed this deadline pending final judgment in this action (Filing No. 53).[1]

### 2.  **The Superior Street Homes**

The Superior Street Homes are also designed as single-family residences and located in a residential neighborhood. *Id.* ¶ 72. Three women currently live in one of the Superior Street Homes; the other is empty. *Id.* ¶ 74. Both Superior Street Homes are designed to house up to eight people for up to eighteen months. Residents are "graduates" of Place of Grace programs who still need and receive programming and who remain persons with disabilities. *Id.* ¶¶ 73, 75–76.

The Superior Street Homes are set up to allow residents to support themselves as a family while they recover from substance abuse disorders, and this type of living environment is essential to their recovery. *Id.* ¶ 77. Residents live as a family, sharing meals, responsibility, and life. *Id.*

---

[1] Ind. Fire Prevention & Bldg. Safety Comm'n, Meeting Minutes for Nov. 2024 Meeting, p. 19 (Nov. 7, 2024), https://www.in.gov/dhs/files/2024-11-07-fpbsc-minutes.pdf; Fed. R. Evid. 201(b); *see Wynn v. City of Indianapolis*, No. 20-cv-1638, 2022 WL 1120490, at *15 (S.D. Ind. Apr. 14, 2022) (citing cases permitting judicial notice of public records from government websites).

¶ 79. The Superior Street Homes do not have a live-in manager, but they are regularly visited by Place of Grace staff who assist with programming and provide other services. *Id.* ¶ 78. The Superior Street Homes are controlled in large part by the residents, who are responsible for the day-to-day operation of the Homes. *Id.* ¶ 80.

Place of Grace had arranged for Habitat for Humanity to build the Superior Street Homes. Habitat for Humanity was going to charge $164,000.00 to build each Home, which included finishing costs like landscaping, window treatments, and appliances. *Id.* ¶ 88. But when Habitat for Humanity was informed that the Homes would need to be built to Class 1 standards, it declined to build them. *Id.* ¶ 89. Place of Grace therefore needed to hire a private contractor, and it paid more than $280,000.00 for the construction, not including any finishing costs. *Id.* ¶ 90.

## B.    Indiana Building Laws

Indiana law divides structures into two classes: Class 1 and Class 2. Ind. Code §§ 22-12-1-4 and -5. Class 1 is the more commercial of the two and is typically subject to heightened construction standards. Indiana Code § 22-12-1-4 classifies a structure as Class 1 if any part of it is intended to be used or occupied by any of the following: (1) the public; (2) three or more tenants; or (3) one or more persons who act as employees of another. The Indiana Code does not define "tenant." Under Indiana Code § 22-12-1-5, a Class 2 structure is one intended to contain only one or two dwelling units, unless any part of the structure is regularly used as a Class 1 structure.

Pursuant to Indiana law, IDHS and its Executive Director administer Title 22, Section 12 of the Indiana Code and are required to administer a program to enforce "[b]uilding laws and related variances and other orders that apply to Class 1 structures." Ind. Code § 22-15-2-7(1); *see id.* § 10-19-2-2(a)(5)(D). IDHS has authority to enter and inspect properties and to enforce building laws against violators, including by obtaining administrative orders and financial penalties and by seeking judicial relief. Ind. Code § 22-15-2-6(a)(3), § 22-12-7-1. IDHS has sole

discretion to conduct an inspection of a structure (Filing No. 48 at 7). However, according to the IDHS Defendants, IDHS will likely not inspect a structure or enforce state building codes unless a structure is on IDHS's "priority list" or "a triggering event occurs and there is no local inspection authority responsible to perform the inspection." *Id.* IDHS has not inspected the Guilford Street Home or the Superior Street Homes, and the Homes are not on IDHS's priority list. *Id.*

Variance applications must be submitted to IDHS, which may either rule on the application or, in its sole discretion, refer the application to the Commission. 675 Ind. Admin. Code 12-5-5.3. The Commission, which is legally distinct from IDHS, has authority to adopt state-wide rules regarding the administration and enforcement of building and fire safety laws. Ind. Code §§ 22-11-3.1-1 through 22-15-7-9. IDHS may grant a variance to any rule adopted by the Commission. Ind. Code § 22-13-2-11(a).

If IDHS decides to refer a variance application, then "only the [C]omission may make a determination on the variance request." 675 Ind. Admin. Code 12-5-5.3. Whichever entity rules on the application may impose sanctions related to that application, including revocation, suspension, censure, reprimand, and probation. 675 Ind. Admin. Code 12-5-9. The Commission has authority to review, modify, or reverse any variance order issued under Title 22, Section 12, and to review orders concerning Class 2 structures. Ind. Code §§ 22-13-2-7(a), (c).

## C.    *New Horizons* **and IDHS's Subsequent Building Law Interpretations**

Place of Grace contends that this case is essentially a repeat of *New Horizons Rehabilitation, Inc. v. State*, No. 4:17-cv-49-TWP-DML (S.D. Ind.) ("*New Horizons*"), so a summary of that case is warranted. The plaintiff in *New Horizons*, like Place of Grace, was a non-profit organization that ran group homes for adults with disabilities. 400 F. Supp. 3d 751, 755 (S.D. Ind. 2019). The New Horizons homes all looked and functioned like single-family dwellings. In 2013, New Horizons was donated property on which to build a group home for adults with

intellectual and developmental disabilities. New Horizons was told that its proposed home was a Class 1 structure, so the plans for the home needed to be reviewed and approved by IDHS. After reviewing the plans, IDHS stated that the home would need to include a sprinkler system. New Horizons requested a variance from the sprinkler requirement, which was denied.

New Horizons filed a complaint for declaratory and injunctive relief, arguing that the decision to classify the group home as a Class 1 structure violated the Equal Protection Clause, ADA, FHAA, and Rehabilitation Act. In July 2019, the Court issued its summary judgment decision, in which the Court concluded that although Indiana's zoning scheme was facially neutral, Defendants were not applying the zoning statutes consistently and were " treat[ing] intellectual[ly] and developmentally disabled persons differently from others without any justification." 400 F. Supp. 3d at 768. The Court specifically noted that "IDHS did not provide a definition of the word 'tenant' that it applies systematically, which includes foster children but not New Horizons' clients. Nor do Ind. Code §§ 22-12-1-4 or -5 define the word 'tenant.'" *Id.* The Court granted summary judgment in favor of New Horizons on its disparate treatment and failure to accommodate claims and permanently enjoined Defendants from treating New Horizons' group home as a Class 1 structure or imposing on it the costs or burdens associated with Class 1 structures. *Id.* at 770.

In March 2020, less than a year after *New Horizons*, IDHS issued a public notice regarding the "Classification of Supportive Living Facilities." (Filing No. 38-1). The notice was intended "[t]o address the overlap between the definitions of Class 1 and Class 2 structures" and "clarify when supportive living facilities (facilities that provide staff to its residents to assist with daily living activities) are considered Class 1 or Class 2 Structures." *Id.* The notice provides, in part:

> A tenant is someone, or some group that either: (1) has possession of a unique portion of a structure; or (2) occupies a structure on unique or independent terms from other occupants. The overarching concern is whether the person or persons

occupying, or intending to occupy, the structure or portion of the structure, are doing so independently or as a single occupant.

*Id.*

## D.    <u>Procedural History</u>

Place of Grace initiated this action in July 2024 by filing its Complaint for Declaratory and Injunctive Relief against IDHS and its Executive Director (together, the "IDHS Defendants"), the members of the Commission[2] ([Filing No. 1](#)). In October 2024, Place of Grace filed its Amended Complaint, which is now the operative pleading ([Filing No. 38](#)). Place of Grace seeks a declaration that Defendants have violated federal law and an order either: enjoining Defendants from classifying the Homes as Class 1 structures and from treating the Homes different than any other single-family residence; or ordering Defendants to grant a variance for the Guilford Street Home excusing all Class 1 requirements, including a sprinkler system. *Id.* at 16.[3] On October 16, 2024, the IDHS Defendants filed the instant Partial Motion to Dismiss ([Filing No. 47](#)), which is now ripe for the Court's review.

## II.    <u>LEGAL STANDARD</u>

## A.    <u>Dismissal Under Rule 12(b)(1)</u>

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The

---

[2] Place of Grace's original Complaint also named the State of Indiana as a defendant, but the Amended Complaint removed the State as a defendant.

[3] The Amended Complaint also seeks damages for the financial injuries incurred from having to hire a private contractor to construct the Superior Street Homes, but Defendants do not move to dismiss Place of Grace's damages claim ([Filing No. 47](#)). The Amended Complaint also requests a preliminary injunction, but Place of Grace has since withdrawn that requested relief ([Filing No. 53](#)).

plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

When ruling on a motion to dismiss for lack of subject-matter jurisdiction, "the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Further, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation modified).

## B.   Dismissal under Rule 12(b)(6)

Similarly, Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual

support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation modified). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.    DISCUSSION

The IDHS Defendants argue that Place of Grace has not established standing or ripeness for its claims against them because they have not yet enforced any building laws against Place of Grace. The IDHS Defendants further contend that they are entitled to sovereign immunity and that Place of Grace fails to state a claim upon which relief can be granted. The Court will first address standing and ripeness, then sovereign immunity, and finally failure to state a claim.

### A.    Standing and Ripeness

Article III of the United States Constitution limits federal courts to resolving "cases" and "controversies." U.S. Const. art. III, § 2. This limitation "requires a claim that is ripe and a plaintiff who has standing." *Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007). These concepts are distinct but related: "[w]hereas ripeness is concerned with when an action may be brought, standing focuses on who may bring a ripe action." *Id.* (quoting *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1298 n.1 (3d Cir. 1996)).

To establish standing, Place of Grace must allege it suffered (1) an injury in fact, (2) that is fairly traceable to the defendants, and (3) that is likely to be redressed by a favorable judicial decision. *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 639 (7th Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The doctrine of ripeness "seeks to avoid the premature adjudication of cases when the issues posed are not fully formed, or when the nature and extent of

the statute's application are not certain." *Triple G Landfills, Inc. v. Bd. of Comm'rs of Fountain Cnty.*, 977 F.2d 287, 288–89 (7th Cir. 1992). A claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up).

The IDHS Defendants argue that Place of Grace fails to satisfy the causation and redressability elements of standing. They contend that the Commission, and not IDHS, caused Place of Grace's injuries by denying its variance application for the Guilford Street Home, and only the Commission can redress those injuries by granting a variance (Filing No. 48 at 11). The IDHS Defendants further argue that any injuries arising from IDHS's potential future inspection of the Guilford Street Home are speculative, so any claims against the IDHS Defendants are not yet ripe. *Id.* at 16. In response, Place of Grace clarifies that this action does not relate solely to the Commission's denial of a variance request for the Guilford Street Home. Place of Grace asserts two claims against the IDHS Defendants: (1) intentional discrimination by classifying the Guilford Street Home *and* Superior Street Homes as Class 1 structures; and (2) failure to provide a reasonable accommodation by declining to grant Place of Grace's variance request for the Guilford Street Home (Filing No. 52 at 4, 11). The Court will address standing and ripeness as to each claim.

### 1. **Intentional Discrimination**

Place of Grace alleges that IDHS is intentionally discriminating on the basis of disability by classifying its Homes as Class 1 structures, but not identical structures housing nuclear families (Filing No. 52 at 14). Place of Grace claims that as a result of IDHS's discriminatory classification, "a variety of requirements have been imposed upon Place of Grace that would not be imposed if the same structures . . . [were] classified as Class 2." *Id.* at 16. Place of Grace further explains that its injuries would be redressed by an order enjoining the IDHS Defendants from classifying the Homes as Class 1 structures (or from treating the Homes differently than other single-family

residences), and its discrimination claim is ripe because Place of Grace is required to "maintain Class 1 compliance" for the Superior Street Homes "in perpetuity," and because once the Commission's conditional variance expires, Place of Grace will be under the "constant threat of enforcement" of Class 1 building laws. *Id.* at 18.

### a. <u>Causation</u>

The IDHS Defendants assert that they did not cause Place of Grace's alleged injuries because the Commission, and not IDHS, denied the variance for the Guilford Street Home (<u>Filing No. 48 at 12</u>–15). However, the injury alleged in this claim is the discriminatory classification of the Guilford Street Home and Superior Street Homes, not the denial of a variance (<u>Filing No. 52 at 14</u>–16). Place of Grace cites recent cases in which the Seventh Circuit and this Court have held that a classification of a structure may provide the basis for an intentional discrimination claim, regardless of whether a variance is available. *See Church of Our Lord & Savior Jesus Christ v. City of Markam*, 913 F.3d 670, 677 (7th Cir. 2019); *New Horizons*, 400 F. Supp. 3d at 769.

On reply, the IDHS Defendants dispute that they determined that Place of Grace's Homes or "'group homes' as a whole" are Class 1 structures (<u>Filing No. 60 at 4</u>). This assertion, though, is belied by Defendants' comments on Place of Grace's variance application, its employee's comments at the Commission's July 2022 meeting, and the IDHS Defendants' statements in similar cases before this Court, including *Next Step Recovery Home, Inc. v. Indiana*, No. 1:24-cv-353-TWP-MKK (S.D. Ind.) ("*Next Step*") (<u>Filing No. 52 at 14</u>–15).

In reviewing variance applications, IDHS can add "Staff Recommendation Notations," including "NVR," meaning no variance is required, and "C," meaning the Commission should

discuss the application. (Filing No. 38-3 at 1). IDHS can also add "Staff Comments"[4] to the applications. On Place of Grace's application, IDHS used the Recommendation Notation "C," and not "NVR," implying that a variance excusing the sprinkler requirement for Class 1 structures *is* required. Likewise, the Staff Comments on Place of Grace's application state, "[t]he code *requires* an automatic sprinkler system installed." *Id.* (emphasis added). Class 2 structures do not require sprinklers, so the Recommendation Notation and Comment evidence IDHS's determination that the Home is a Class 1 structure, even though IDHS referred the decision of whether to grant a variance from Class 1 requirements to the Commission. *Id.*; (Filing No. 52 at 16). Moreover, during the Commission's July 2022 meeting, the Fire Marshal—an employee of IDHS—stated that Place of Grace "should be in compliance with the commercial code," again indicating that IDHS deems the Guilford Street Home to be a Class 1 structure (Filing No. 38-5 at 3). This determination reasonably extends to the Superior Street Homes, which are operated by the same entity and in the same way as the Guilford Street Home.

More tellingly, in *Next Step*, Defendants made clear that it deems each disabled adult living in a group home to be an individual "tenant." As a result, the "group home arrangement" in *Next Step*, which is virtually identical to Place of Grace's arrangement "simply does not meet the statutory definition of a Class 2 Structure."[5] IDHS has also filed pleadings in other recent lawsuits admitting that group homes like Place of Grace's Homes are Class 1 structures.[6] So although IDHS

---

[4] The DHS Defendants contend that the "Staff Comments" only summarize the Commission's actions (Filing No. 60 at 6). It is not clear whether "Staff" refers to DHS staff or Commission staff. The Court must draw all reasonable inferences in favor of Place of Grace, so for purposes of this Order, the Court reasonably infers that "Staff" means DHS staff.

[5] Defendants' Response to Plaintiffs' Motion for Preliminary Injunction at 11, *Next Step* (No. 1:24-cv-353), Dkt. 40.

[6] Defendants' Answer at ¶¶ 40–41, 65, *Inspiration Ministries v. Indiana* (No. 1:23-cv-2027), Dkt. 24; Defendants' Answer at ¶¶ 38–39, 53, *Behind the Wire Ministries, Inc. v. Indiana* (No. 1:24-cv-143), Dkt. 39; Defendants' Answer at ¶¶ 31–33, 59, *Firebrand Ministries, Inc. v. Indiana* (No. 1:24-cv-630), Dkt. 16.

has not stated categorically that *all* group recovery homes are Class 1 structures, Defendants' recent assertions in *Next Step* and other recent lawsuits show that they consider Place of Grace's Homes to be Class 1 structures.

Place of Grace has established a meaningful connection between the IDHS Defendants' allegedly discriminatory conduct and Place of Grace's alleged injuries.

### b. <u>Redressability</u>

Place of Grace contends that its injuries are redressable by the IDHS Defendants because IDHS has statutory authority to classify regulated structures and can determine that the Homes are not Class 1 structures, "thereby ending the need for a variance." (Filing No. 52 at 17). IDHS also has sole discretion to inspect structures and initiate certain enforcement actions, so Place of Grace's injuries would be further redressed by an order enjoining the IDHS Defendants from inspecting the Homes and imposing any Class 1 building requirements on them. *Id.* at 18.

The IDHS Defendants contend that they cannot redress Place of Grace's alleged injuries because the Commission has sole discretion to grant Place of Grace's requested variance, and an order against IDHS would not bind the Commission. The IDHS Defendants emphasize that IDHS and the Commission are separate entities, and "[e]ach entity has its own authority to enforce building codes." (Filing No. 48 at 10–11). However, it is because IDHS and the Commission are independent entities that Place of Grace's injuries will be redressed only by a judgment ensuring that *neither* entity can enforce Class 1 building laws against the Homes. Even if the Court were to enjoin the Commission from imposing Class 1 requirements on the Homes, IDHS would still be free to inspect the Homes and impose those same requirements by levying penalties against Place of Grace, issuing and enforcing administrative orders, and even seeking judicial relief. Ind. Code § 22-15-2-6(a); (Filing No. 52 at 17). In other words, Place of Grace's injuries cannot be redressed

without a judgment against both the Commission and IDHS. Place of Grace has therefore satisfied the redressability requirement for standing.

      **c.  <u>Ripeness</u>**

Place of Grace lastly argues that its discrimination claim is ripe. As to the Guilford Street Home, Place of Grace asserts that once the Commission's conditional variance expires, it will face a "constant threat of enforcement" by IDHS (Filing No. 52 at 18). As to the Superior Street Homes, Place of Grace notes that it has already incurred tens of thousands of dollars making the Superior Street Homes Class 1 compliant, and that the Superior Street Homes must remain Class 1 compliant "in perpetuity" or face enforcement actions by IDHS. *Id.* at 18. Defendants respond that Place of Grace's claims are not ripe because there is no evidence that IDHS has, or will soon, enforce any Class 1 building laws against any of the Homes, and Place of Grace's alleged harm is speculative (Filing No. 48 at 12–13). Defendants argue that this case is distinguishable from *Next Step*, in which a IDHS inspector visited the plaintiff organization's recovery home and told the plaintiff that a sprinkler system needed to be installed. *Next Step*, 755 F. Supp. 3d at 1082. Here, "there is no allegation or evidence that any employee of IDHS determined that Place of Grace's structures were not in compliance with any safety standards, or that an IDHS employee imposed requirements on the Plaintiff." (Filing No. 60 at 2–3).

The fact that IDHS has not yet enforced Class 1 building laws against Place of Grace does not bar its claim. It is well established that when a plaintiff's fear about enforcement of a law "is not imaginary or wholly speculative," the plaintiff need not expose itself to penalties to be entitled to challenge the law. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979). Although the Guilford Street Home is not on IDHS's "priority" list, and the Superior Street Homes are currently in compliance with Class 1 requirements, IDHS has not disavowed any intention to inspect or enforce Class 1 requirements on the Guilford Street Home, nor has it disavowed any

intention to inspect or take enforcement action against the Superior Street Homes once those Homes become noncompliant with Class 1 standards. That refusal may give rise to a credible threat of enforcement. *See, e.g.*, *Babbitt*, 442 U.S. at 302; *Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) ("The Government has not argued . . . that plaintiffs will not be prosecuted if they do what they say they wish to do."); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012) ("Preenforcement suits always involve a degree of uncertainty about future events. So long as that uncertainty does not undermine the credible threat of prosecution or the ability of the court to evaluate the merits of the plaintiff's claim in a preenforcement posture, there is no reason to doubt standing." (citation omitted)); *520 Mich. Ave. Assocs., Ltd. v. Devine*, 433 F.3d 961, 962–63 (7th Cir. 2006) ("Standing depends on the probability of harm, not its temporal proximity. . . . The catalog of decisions that conduct review before a rule has gone into force, and hence long before prosecution is 'imminent,' is extensive.").

Considering IDHS's refusal to disavow enforcement of Class 1 building requirements against Place of Grace, its enforcement actions in *Next Step*, and Defendants' assertions regarding the classification of similar group homes in several other recent lawsuits, Place of Grace has established a credible threat of enforcement by IDHS. *See Ind. Right to Life Victory Fund v. Morales*, 66 F.4th 625, 630 (7th Cir. 2023) ("For a preenforcement challenge like this one, the touchstone is whether the plaintiff has alleged 'a credible threat of prosecution' under the statute." (quoting *Babbitt*, 442 U.S. at 298)). Place of Grace need not wait for IDHS to initiate enforcement action to seek relief. *See Babbitt*, 442 U.S. at 302; *Triple G Landfills*, 977 F.2d at 289 (finding that plaintiff's facial challenge to an ordinance was ripe even though plaintiff had not yet filed a permit application); *Human Res. Rsch. & Mgmt. Grp., Inc. v. Cnty. of Suffolk*, 687 F. Supp. 2d 237, 251–25 & n.11 (E.D.N.Y. 2010) (stating that non-profit organization operating group homes faced a

"real threat of injury" arising from "potential civil and criminal penalties for non-compliance with the local law's requirements," even though the county was not then enforcing the applicable law). Place of Grace's discrimination claim against the IDHS Defendants is therefore ripe.

Place of Grace has standing to bring its intentional discrimination claim against the IDHS Defendants, and that claim is ripe. The IDHS Defendants' Partial Motion to Dismiss the intentional discrimination claim for lack of subject-matter jurisdiction is therefore **denied**.

### 2. **Failure to Accommodate**

Place of Grace next alleges that the IDHS Defendants failed to provide a reasonable accommodation by declining to grant its variance request for the Guilford Street Home and instead referring that request to the Commission (Filing No. 52 at 20 ("IDHS's failure to provide a reasonable accommodation when it was notified of the need for one, and had the authority to do so, is the violation.")). The IDHS Defendants respond that the Commission, and not IDHS, denied Place of Grace's variance application, so only the Commission caused and can redress Place of Grace's injuries related to the variance denial. The Court agrees with the IDHS Defendants.

Although the Amended Complaint alleges that Defendants failed to provide a reasonable accommodation by "refusing to grant" Place of Grace's variance application (Filing No. 38 at 21), it is clear that the Commission's denial of the variance request, and not IDHS's referral of the request, caused Place of Grace's alleged injuries. The denial of the variance is what has forced Place of Grace to choose between installing a prohibitively expensive sprinkler system or facing the constant threat of enforcement by Defendants.

IDHS's decision to refer the variance application, by contrast, did nothing more than reassign Place of Grace's accommodation request to another decisionmaker, which IDHS was legally entitled to do. And once the application was referred, the Commission had sole discretion to grant or deny it. Place of Grace has not cited any authority supporting its position that IDHS is

prohibited from exercising its statutory authority to delegate certain decisions to the Commission when federal law requires a certain outcome. There is no basis for concluding that Congress intended for federal anti-discrimination laws to infringe on state laws in this way. Instead, these federal laws ensure that the decisionmaker (in this case, the Commission) complies with federal anti-discrimination mandates. Place of Grace's alleged injuries were caused solely by the Commission's allegedly unlawful decision to deny a variance from the sprinkler requirement. And because the Commission has sole discretion to grant or deny Place of Grace's variance application, only the Commission can redress Place of Grace's allege injuries by granting the variance.

Place of Grace has not established a meaningful connection between its alleged injuries and IDHS's referral of the variance application to the Commission, or that Place of Grace's injuries related to the variance application can be redressed by IDHS. Place of Grace therefore lacks standing to assert its failure to accommodate claim against the IDHS Defendants. The Partial Motion to Dismiss for lack of subject-matter jurisdiction is **granted** as to that claim.

## B.    <u>Sovereign Immunity</u>[7]

The IDHS Defendants also move for dismissal of Place of Grace's claims for injunctive relief under Rule 12(b)(6), arguing that the IDHS Defendants are entitled to sovereign immunity and that the *Ex parte Young* exception to sovereign immunity does not apply to IDHS or its Executive Director (<u>Filing No. 48 at 19</u>–20).

Place of Grace concedes that the *Ex parte Young* doctrine does not apply to IDHS, but it asserts that IDHS is still a proper party to Place of Grace's Rehabilitation Act claims (<u>Filing No. 52 at 25</u> n.3). So even if the Court embraced IDHS's argument, it would still face the same claims

---

[7] Because Place of Grace's failure to accommodate claim is subject to dismissal for lack of subject-matter jurisdiction, the Court will address the DHS Defendants' arguments for dismissal under Rule 12(b)(6) only as they relate to Place of Grace's remaining intentional discrimination claim.

and requested relief under the Rehabilitation Act. *See Valencia v. City of Springfield*, 883 F.3d 959, 967 (7th Cir. 2018) ("[T]he same analysis generally applies under all three statutes."). Congress expressly made its intent clear that a state is not immune for a violation of Section 504 of the Rehabilitation Act of 1973 if a state program receives federal funding. The Court therefore declines to dismiss Place of Grace's claims for injunctive relief against IDHS on the grounds of sovereign immunity at this time.

As to the Executive director, Place of Grace argues that *Ex parte Young* applies to the Executive Director because he would be "'responsible for ensuring that any injunctive relief is carried out.'" ([Filing No. 52 at 24](#) (quoting *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011))). The Eleventh Amendment bars suit against state officials acting in their official capacities unless, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff files suit seeking prospective equitable relief for ongoing violations of federal law. *Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 370–71 (7th Cir. 2010). The plaintiff must show that the named state official "plays some role in enforcing the statute" for the exception to apply. *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018). The Court "need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" for *Ex parte Young* to apply. *Ind. Prot.*, 603 F.3d at 370–71 (alteration in original) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)).

The IDHS Defendants rely on *McDonough Associates, Inc. v. Grunloh*, 722 F.3d 1043 (7th Cir. 2013), for the proposition that *Ex parte Young* permits suit against a state official only if that official has actually violated federal law. However, in *Ex parte Young*, the Supreme Court clarified that "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have *some connection* with the

enforcement of the act." 209 U.S. at 157 (emphasis added); *see Doe*, 883 F.3d at 976 ("A plaintiff can avoid [sovereign immunity], however, by naming a state official who has 'some connection with the enforcement' of an allegedly unconstitutional state statute for the purpose of enjoining that enforcement."). The appropriate focus is thus whether the Executive Director has "some connection" to enforcement of Indiana's building laws, not whether he personally violated federal law. *See Gonzalez*, 663 F.3d at 315 ("[S]ince [plaintiff] also seeks injunctive relief it is irrelevant whether the [official] participated in the alleged violations."). The IDHS Defendants do not dispute that the Executive Director has at least some connection to enforcement of Indiana's building laws, so suit against the Executive Director under *Ex parte Young* is proper.

The Partial Motion to Dismiss on the grounds of sovereign immunity is **denied**.

## C.    <u>Failure to State a Claim</u>

Lastly, the IDHS Defendants argue that Place of Grace fails to allege a plausible claim for relief against the IDHS Defendants, since the Amended Complaint focuses on the Commission's alleged misconduct (Filing No. 48 at 20–21). As explained above, Place of Grace alleges that IDHS discriminatorily classified the Homes, but not identical structures housing nuclear families, as Class 1 structures, in violation of federal law (Filing No. 38 ¶¶ 58, 83, 100). These allegations satisfy the minimal pleading standards of Rule 8. *Iqbal*, 556 U.S. at 677–78 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations.'"). The IDHS Defendants' Partial Motion to Dismiss for failure to state a claim is **denied**.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the IDHS Defendants' Partial Motion to Dismiss (Filing No. 47) is **GRANTED in part** and **DENIED in part**. Place of Grace's failure to accommodate claim against the IDHS Defendants is **dismissed without prejudice** for lack of subject-matter

jurisdiction.[8] The IDHS Defendants' Partial Motion to Dismiss is otherwise **denied**. Place of Grace's intentional discrimination claim against the IDHS Defendants and its failure to accommodate claim against the Commission **SHALL PROCEED**.

The **Clerk is directed** to terminate the State of Indiana as a defendant in this action.

**SO ORDERED**.

Date:    9/19/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Allison Mauk
Office of Indiana Attorney General
allison.mauk@atg.in.gov

Meredith McCutcheon
INDIANA ATTORNEY GENERAL
meredith.mccutcheon@atg.in.gov

Katherine A Meltzer
Office of Indiana Attorney General
katherine.meltzer@atg.in.gov

Stevie J. Pactor
ACLU OF INDIANA
spactor@aclu-in.org

---

[8] A dismissal for lack of subject-matter jurisdiction is not a decision on the merits and thus is without prejudice. *See Kowalski v. Boliker*, 893 F.3d 987, 994 (7th Cir. 2018) ("[A] dismissal for want of subject-matter jurisdiction is necessarily without prejudice.").